UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELO EDWARDLEE BYRD,<br><br>    Petitioner,<br><br>    v.<br><br>C.E. DUCART,<br><br>    Respondent. | No. 2:15-cv-1592 JAM DB P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges a judgment of conviction entered against him on July 22, 2009 in the Sacramento County Superior Court on one count of first degree residential burglary, one count of attempted first degree robbery, assault with intent to commit rape, and sexual battery. He seeks federal habeas relief on the ground that his arrest violated the Fourth Amendment. Upon careful consideration of the record and the applicable law, the undersigned will recommend denial of petitioner's application for habeas corpus relief.

**BACKGROUND**

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual and procedural summary:

////

1

As she left her home L.J. (Mother) saw five Black men walk down the driveway she shared with her neighbors. The men walked on both sides of Mother's car to allow her car to pass. Mother saw the men's faces and clothing. Mother's children—a 14-year-old daughter (Daughter), a 10-year-old son (Son) and their younger siblings—were at home alone.

Daughter was walking down the stairs of her home when five men, all carrying guns, rushed in the front door. One of the intruders, defendant Ellington, locked the door. The intruders pulled down their masks and Daughter saw their faces.

The intruders pointed their guns at Daughter and ordered her to get down. They demanded to know where the money was and said, "[w]e know you got money." They ransacked her house.

Daughter tried to run up the stairs but someone pulled her down the stairs by the back of her shirt. Some of the intruders, including one who wore grey Vans brand shoes, ran past Daughter to the second floor of the house. Daughter later identified the intruder with the grey Vans shoes as defendant Johnson.

One of the intruders who went upstairs entered Son's room and pointed a gun at Son. The intruder threatened to shoot Son if he moved or said anything.

Two of the intruders stayed with Daughter on the stairway. One of them wore shoes with multi-colored soles, like a pair of shoes Daughter owned. This intruder was later identified as Byrd.

On the stairway, Daughter was hit with a gun. Her head was held down and she was punched in the face. Someone ordered that Daughter be brought upstairs and said, "[s]trip the bitch." Byrd took off Daughter's shirt and bra. He choked Daughter and dragged her upstairs to the hallway bathroom. There, Daughter's head was hit against the sink. Hines and Byrd were with Daughter in the hallway bathroom.

Byrd then took Daughter to Mother's bedroom and bent her over the bed. The other intruders were in the room. Some of them were looking through the things in the room. Daughter tried to grab the telephone but Byrd hit her. Byrd unbuckled Daughter's belt and pants and felt her bare breast with his hand.

During the incident, the intruders referred to each other as "Blood." Son reported to an investigating deputy that he heard the intruders ask, "[w]here's the money, Blood?"

The intruders ran out of the house through the back sliding door when Mother returned home and honked her car horn.

Daughter told deputies the intruders were four to six Black males in their 20's, of average build, and wearing dark-colored hooded sweatshirts and dark-colored pants. She reported that each intruder carried a gun. Mother similarly reported seeing four to six Black

males in their teens or early 20's, wearing dark-colored hooded sweatshirts.

Deputies were informed that the perpetrators fled the victims' house and ran toward Stockton Boulevard. Within 10 minutes after Daughter called 911 to report the crimes, Sergeant Craig Goncalves saw defendants—four Black males—walking together along northbound Stockton Boulevard. Defendants were less than a mile from the victims' house. Defendants continued walking intently, ignoring the patrol cars driving past them with lights and sirens activated. It appeared to Goncalves that defendants were trying not to be noticed.

Goncalves made a U-turn to contact the group. He and his partner Deputy Julius Wallace stopped Ellington, Johnson and Byrd at the intersection of Stockton Boulevard and Fruitridge Road, near a Rite Aid drug store. Hines crossed to the opposite side of Stockton Boulevard and walked away from Goncalves and Wallace but was subsequently detained by Sergeant Timothy Gorham.

Mother and Daughter were taken separately to the Rite Aid parking lot for show-ups. Mother was not present at Daughter's show-up, and Daughter did not speak with Mother before her show-up. Each positively identified defendants as the perpetrators.

A palm print obtained from the sliding glass door at the victims' house matched Johnson's palm print. Forensic analysis determined that the shoes worn by Byrd could have made a shoeprint found in the victims' backyard. Law enforcement officers also found a loaded .45 caliber semiautomatic handgun magazine in a neighbor's backyard.

Additional facts are referenced in the discussion as relevant to the contentions on appeal.

Defendants were charged with (1) first degree residential burglary (Pen. Code, § 459),1 (2) attempted first degree robbery of Daughter (§§ 664, 211, 213, subd. (a)(1)(A)), (3) attempted first degree robbery of Son (§§ 664, 211, 213, subd. (a)(1)(A)), (4) assault with a firearm against Son (§ 245, subd. (a)(2)), (5) assault with intent to commit rape against Daughter (§§ 220, subd. (b), 460), and (6) sexual battery of Daughter (§ 243.4, subd. (a)). It was alleged in counts one through six that defendants or a principal personally used a firearm (§§ 1203.06, subd. (a)(1), 12022.5, subd. (a), 12022.53, subds. (b), (e)(1)), causing the offense to be a serious and violent felony (§§ 1192.7, subd. (c)(8), 667.5, subd. (c)(8)). It was also alleged that Ellington, Hines and Byrd committed the charged offenses for the benefit of, at the direction of and in association with a criminal street gang with the specific intent to promote, further and assist in criminal conduct by gang members (§ 186.22, subd. (b)(1)). No gang enhancement allegation was charged against Johnson. Hines was additionally charged in count seven with possession of a firearm by a felon (former § 12021, subd. (a)(1)).

////

> The jury convicted Byrd, Hines and Johnson on counts one and two and found the enhancement allegations in those counts to be true. Byrd and Hines were also convicted on counts five and six and the jury found the enhancement allegations in those counts to be true. Additionally, Hines was convicted on count seven. The jury found Byrd, Hines and Johnson not guilty on the remaining counts. The trial court declared a mistrial as to Ellington because the jury could not reach a verdict on the charges against him.
>
> Ellington was retried on counts one through six. The second jury convicted him on counts one through four and found the gang enhancement allegation and the allegation that a principal used a firearm to be true but found the allegation that Ellington personally used a firearm to be not true. The second jury deadlocked on counts five and six. The trial court declared a mistrial on those counts.

People v. Hines, No. CO64130, 2014 WL 988496, at \*\*1-3 (Cal. Ct. App. Mar. 14, 2014).

**STANDARDS OF REVIEW APPLICABLE TO HABEAS CORPUS CLAIMS**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Greene v. Fisher, 565 U.S. 34, 37 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "'may be

4

persuasive in determining what law is clearly established and whether a state court applied that law unreasonably.'" Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 567 U.S. 37 (2012)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." Id. at 1451. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 76-77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting Williams, 529 U.S. at 405-06). "Under the 'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.'" Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 ("It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." (Internal citations and quotation marks omitted.)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a

5

state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

There are two ways a petitioner may satisfy subsection (d)(2). Hibbler v. Benedetti, 693 F.3d 1140, 1146 (9th Cir. 2012). He may show the state court's findings of fact "were not supported by substantial evidence in the state court record" or he may "challenge the fact-finding process itself on the ground it was deficient in some material way." Id. (citing Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004)); see also Hurles v. Ryan, 752 F.3d 768, 790-91 (9th Cir. 2014) (If a state court makes factual findings without an opportunity for the petitioner to present evidence, the fact-finding process may be deficient and the state court opinion may not be entitled to deference.). Under the "substantial evidence" test, the court asks whether "an appellate panel, applying the normal standards of appellate review," could reasonably conclude that the finding is supported by the record. Hibbler, 693 F.3d at 1146 (9th Cir. 2012).

The second test, whether the state court's fact-finding process is insufficient, requires the federal court to "be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." Hibbler, 693 F.3d at 1146-47 (quoting Lambert v. Blodgett, 393 F.3d 943, 972 (9th Cir. 2004)). The state court's failure to hold an evidentiary hearing does not automatically render its fact finding process unreasonable. Id. at 1147. Further, a state court may make factual findings without an evidentiary hearing if "the record conclusively establishes a fact or where petitioner's factual allegations are entirely without credibility." Perez v. Rosario, 459 F.3d 943, 951 (9th Cir. 2006) (citing Nunes v. Mueller, 350 F.3d 1045, 1055 (9th Cir. 2003)).

If a petitioner overcomes one of the hurdles posed by section 2254(d), this court reviews the merits of the claim de novo. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised."). For the claims upon which petitioner seeks to present evidence, petitioner must meet the standards of

28 U.S.C. § 2254(e)(2) by showing that he has not "failed to develop the factual basis of [the] claim in State court proceedings" and by meeting the federal case law standards for the presentation of evidence in a federal habeas proceeding. See Cullen v. Pinholster, 563 U.S. 170, 186 (2011).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[I]f the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, [this court] may consider both decisions to 'fully ascertain the reasoning of the last decision.'" Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc) (quoting Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005)). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 133 S. Ct. 1088, 1091 (2013).

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853 (citing Delgado v. Lewis, 223 F.3d 976, 981 (9th Cir. 2000)). This court "must determine what arguments or theories . . . could have supported, the

state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court." Richter, 562 U.S. at 102. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

## PETITIONER'S CLAIM

In his sole claim for relief, petitioner challenges his conviction on Fourth Amendment grounds. (ECF No. 1 at 4). Respondent argues that petitioner's search and seizure claim is barred from federal habeas relief pursuant to Stone v. Powell, 428 U.S. 465 (1976). (ECF No. 10 at 7-15.)

The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone, 428 U.S. at 494; see Newman v. Wengler, 790 F.3d 876, 881 (9th Cir. 2015) (holding Stone survived enactment of AEDPA). "The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did, in fact, do so, or even whether the claim was correctly decided." Ortiz–Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996) (citations omitted).

In the instant case, petitioner raised this Fourth Amendment claim in a motion to suppress. (1 CT 194; 1 RT 205-300; 2 RT 301-365.[1]) After a hearing on the matter, where petitioner was allowed to examine witnesses, the judge denied the motion. (2 RT 369-374.) Petitioner then

---

[1] On February 11, 2016, respondent lodged relevant portions of the state court record with this court. (See ECF No. 11.) The Clerk's Transcript is denoted as "CT" and the Record of Transcript as "RT." Other lodged documents are referred to by the Lodged Document or "LD" number.

raised his Fourth Amendment claim on direct appeal to the California Court of Appeal, Third Appellate District, which denied the claim in a reasoned decision. Hines, 2014 WL 988496, at **3-10. Finally, petitioner raised the claim in his petition for review, which the California Supreme Court summarily denied. (LDs 5, 6.)

In his petition and traverse, petitioner argues the merits of his Fourth Amendment claim. However, petitioner does not contend that his Fourth Amendment claim was not fully and fairly litigated in the state courts. As stated above, the relevant inquiry on federal habeas review is whether petitioner had the opportunity for full and fair litigation of his claim, not whether the claim was correctly decided. See Ortiz–Sandoval, 81 F.3d at 899. This court's review of the record shows that the state courts provided petitioner with a "full and fair opportunity to litigate" his Fourth Amendment claim. See Stone, 428 U.S. at 494; Moormann v. Schriro, 426 F.3d 1044, 1053 (9th Cir. 2005); Abell v. Raines, 640 F.2d 1085, 1088 (9th Cir. 1981). Accordingly, petitioner is not entitled to habeas relief, and the petition should be denied.

Accordingly, the court HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). In the objections, the party may address whether a certificate of appealability should issue in the event

////

////

////

////

an appeal of the judgment in this case is filed. See Rule 11, Rules Governing § 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: February 28, 2018

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-habeas/byrd1592.fr